case. Joan Orie Melvin v. District Attorney. Ms. Walsh. Thank you, Your Honor. May proceed. May it please the court. My name is Donna Walsh and I represent Joan Orie Melvin. With the court's permission, I'd like to reserve three minutes for rebuttal. The conviction in this case violates the Fifth Amendment because it is based on a standard of conduct that appears in a workplace rule rather than a criminal statute. In the words of the trial court, the work rule barring political activity by judicial employees was, quote, the crux, unquote, of the Commonwealth's case. And the reason it was the crux of the Commonwealth's case is because members of the judicial staff did not work any set number of hours. They had no minimum hour requirement. They didn't keep time sheets. They didn't record their time. They were salaried. We certainly have the briefing. Let me press you a little bit on this. You're you're saying that the the the heart of this is a workplace rule, but I understand the argument from the other side, and Ms. Favio will speak for himself, to be essentially along the lines of you can use workplace rules. You can use a lot of things to help establish intent or knowledge or a guilty state of mind. That doesn't mean that that's what the crime is. It means that that's evidence from which you can conclude that one element of argument. Two points, Your Honor. And the first is that that's not how this was used in this case. In this case, the prosecution theory was any time you violate a work rule, any time you do something that's outside your job description or that's barred by a work rule, you're ipso facto committing theft of services. But when I look at the prosecutor, first of all, the information, the counsel which was convicted did not cite this. The prosecution's closing argument said violating the rule is not a criminal act. And the trial court's instruction of the jury said the rule is a work rule. It is not a criminal law. A violation of the work rule is not a crime. You are instructed you may not face your guilt or innocence in any way on any alleged violation of a court rule. Why is that not clarifying for the jury that this is just, it might be part of the background of bare mens rea, but it's not criminal? The instruction can't cure what we contend is the constitutional error, which is the way in which the case was prosecuted, the theory of prosecution. And what the prosecutor said in closing argument is the rule tells them they are not supposed to be doing political work. And all of these court employees should have been on notice that that was not permitted by virtue of the rule. And our contention is when that... Why doesn't that just go into the point of intent and knowledge? Your assertion is that that is making it a crime, but the prosecutor also said that the work rule isn't a crime and the court clearly instructed that it isn't a crime. Are you saying that the prosecutor was not allowed to use this piece of evidence to argue intent? Yes, we argue that it was irrelevant and shouldn't have come in. And the Superior Court, by the way, also found it was irrelevant, didn't go so far as to say it shouldn't come in, but found it was irrelevant. The issue here is diversion of services. What was the court entitled to? Did it overpay or did it not receive what it was entitled to? And the evidence was undisputed that the court received all it was all of the judicial work was done. That point's undisputed. The staffers completed all of their work and they completed it on time. And again, they were salaried exempt employees. They weren't entitled to be paid any more or any less. They were entitled... Is this argument... Do we get to this argument if she's not in custody? We get to this argument if she's not in custody. She was in custody. She was still serving her sentence of home confinement at the time we filed our petition. On the counts that are the subject of our petition, yes. Counts 1, 3, 4, she was in custody. So, but you have to say more than just this is irrelevant as a state law matter. You have to say this violates due process because her conviction was based on the guidelines. And I think at most you're saying this might have been distracting. Maybe it should have failed a rule 4 or 3 balancing test. That's not a constitutional issue that's before us on habeas. To make it violate due process has to be based on the guidelines. I don't see how it's based on that if it wasn't charged in the indictment. It's not the prosecution's closing argument. It's not trial court's instruction to the jury. It's being used as a piece of evidence that bears on mens rea. How is that a due process violation? Again, the prosecution is the way it was charged. It was charged as though any violation of this would put someone on notice that a violation of a work rule would expose them to criminal prosecution or punishment, first of all. Second of all, it's a violation of due process to give an employer the authority to decide what conduct constitutes a crime. Even without the guidelines, I thought the Superior Court's opinion and 4 said even without these statutes, it was still a violation of the theft of services statute to use Commonwealth paid employees for activities inuring to her personal benefit. And we as a federal court have to take the state court statement of state laws as accurate. So how can we review this? The problem is there was no diversion. That's what the Superior Court got wrong. Because these staffers were salaried employees, because they were entitled to their full pay regardless of the number of hours worked, it was a pure fiction to say they were overpaid. It was a fiction to say that some of their, for the Commonwealth to argue that some of their time shouldn't have been compensated. Again, they were salaried. They were entitled to their full pay. It is logically impossible to steal any services from anyone who's a salaried employee because the state is going to be paying the same amount regardless. That's right. And as long as they're getting their work done, which is the undisputed testimony in this case, that all of the judicial work was done. The testimony and the evidence was again unequivocal that Joan Ori Melvin's staff was more productive or at the top of the productivity level for the other judges on the Superior Court at the time of this alleged conduct. And where their work was being done and where it's being done timely. Is that a federal law issue or is that a state law issue about interpretation of what counts as diversion that we have to take the state court statement at face value? Well, it becomes a federal law issue when they offer up the standard in the work rule as the equivalent of theft. When you make that false equivalency, that's what violates due process and that's what makes it a federal issue. We contend. Can you speak to the In re Berry case and the Maddie cases which seem to indicate that under Pennsylvania law, you can have a theft of services and you can have it with salaried employees including in Berry, which is a judicial disciplinary proceeding. One involving a judge using an assistant to do some personal errands. Sure, and I think your honor hit the nail on the head. That was a judicial disciplinary proceeding in Berry. In the course of that, did not the panel say and this would be chargeable, a chargeable offense? The court did, but again the context of that was imposing judicial discipline. So if there is a violation of the work rule, that's the place where that issue is properly and should properly be decided. Yeah, but I thought that Berry, maybe I'm mistaken, but I thought Berry said not just that this is a workplace problem, but this would be a chargeable offense. Yeah, there was language to that effect and our point is simply that that's the place where those issues should be decided, which is in the context of judicial discipline. Well, it would make no sense to say this is a chargeable offense under the criminal statute if that weren't authority for, you know, some authority for the proposition that this is more than workplace issue. This is behavior which also constitutes a theft of service and is chargeable as a felony. No? Well, again, the rule itself says if there is a violation of the rule, it's up to the president judge of the court to police those violations. And if there's a violation, what happens is the employee is told you're violating the rule and then if they don't cease their conduct, they can be terminated. I don't think anybody's disagreeing with you, Ms. Walsh, that you can have behavior which would be treated as disciplinary infractions to be addressed in that manner. The question isn't whether that kind of behavior can exist. The question I guess we're dealing with right now is can you have behavior that's bad enough, which it is both subject to disciplinary action by under the workplace rule and a felony under Pennsylvania law. And if the state chooses to pursue it as a felony, it can do that. I mean, do you have some authority for it? And the Berry case seems to say, yeah, that can happen. And this is a case where it could have happened. Do you have any authority for the proposition that if something would be a workplace violation, it just can't be charged in an approach by the state, by the Commonwealth as a felony? I don't think the court has to go that far. And that's not what we're advocating. Our argument is that when there are no time records and there are no timesheets, and I'm not sure what the facts are, the underlying facts were in Berry on that point, but in the Maddy case, so there were time records and there were timesheets. The prison employee submitted a time record saying that he had worked for three hours in the prison when he was in fact someplace else. And in those circumstances, there could be a crime and a violation of the work rule. Although in Maddy, there was no reference to any work rule. So we're not advocating that there could never be a charge. But on these facts, which are that these employees were entitled to the same rate of pay regardless of what they did and that they did all of their judicial work, we contend there can be no theft of services. And that's why the Commonwealth in this case resorted to the use of the work rule. They need to be able to point to something to argue to the jury that these staffers had violated. Are we looking at this through the EDPA lens? I'm sorry, Judge? Are we looking at this through the EDPA lens, the anti-terrorism death penalty act lens? Yes. Okay. So if we're doing that, what in your argument would tell us that the way the trial court approached this, the instructions it gave, and the way the Commonwealth approached it and its arguments resulted in a decision by either the trial court or the Superior Court that was contrary to or an unreasonable application of federal law? Sure. Well, from the beginning, from the information itself, which there was reference to the clearly established federal law. The clearly established federal law is that the Fifth Amendment requires that the elements of a crime must be set forth in a statute passed by the legislature. Okay. And in this case, there was no clearly established standard in any of the crimes charged that would put anyone on a workplace rule. They might be subject to criminal prosecution or penalty. And that's the first due process. Putting the rabbit in the hat there when you say, if you transgress a workplace rule, because of course, the argument from the other side is that may have been a workplace rule, true, but it's also a felony under state law to steal the services of state employees. And we've got a law on that. And this was that, too. Your position seems to be that 18 Pennsylvania consolidated statute 3926 B can't be read as the Superior Court did saying that it's a violation of theft of services to use Commonwealth paid employees for activities for her personal benefit. You say that violates due process. It does in these circumstances where these employees did not keep time records, did not keep time sheets, did not have any minimum work hour requirement. And the testimony was also undisputed that as a judge in the Superior Court, Joan R. And Melvin had complete authority to decide how many hours these employees needed to work so that where there are no time requirements, no time records, there's no diversion of services. The court got all that it was entitled to. All the statute says is disposition of services of others to which is not entitled. So you could work 40 hours, you could work two hours, but you can't take any of those hours for yourself. He knowingly services to his own benefit or to the benefit of another not entitled thereto. I don't understand why time records are necessary before you can have any diversion under this section. Well, it's only a diversion if the court doesn't get what it's entitled to, if it doesn't get what it paid for. And it got both of those in this case. The other aspect. The question is not whether the state is entitled to it. It's whether she wasn't entitled to it. Services of others to which he, she is not entitled, she knowingly diverts those services to her own benefit. So whether the state had a right to it or not, she didn't have a right to it. That's the state's theory here. What's your response? Well, their theory was actually that services were diverted. The state's theory is that any time... Yeah, if the services are going to go anywhere, they're going to go to the state. That's the theory. Maybe they don't have to work 60 hours, but if they're working the 40 hours, those 40 hours are going to the state. And so their theory is this got diverted from the state to your client. And so you're saying that there can never be any diversion of anything for which there is no fixed requirement of a number of hours. As long as the work is done, as long as the state gets what it paid for, there was no diversion. And the reason the Commonwealth needed to resort to the rule, the reason the Commonwealth needed to quantify something is in the 3926B offense, there's a grading provision. So the Commonwealth needed to be able to point to some elements of loss, something that the Commonwealth was allegedly deprived of. And that's how, that's why they created this fiction of this false equivalence. Anytime there's a violation of the rule, therefore it's theft, therefore there's a dollar added to that column. But the value, the value is pegged to what was obtained or diverted. So as long as you can value what she obtained or what was diverted, that's enough. And again, how they valued here was, again, with this fictional equivalence. Staff time, right? That's right. Okay. That's right. All right. Thank you very much, Ms. Walsh. We'll have you back on rebuttal. Thank you, Your Honor. Robin. May it please the Court, Deputy District Attorney Roland Guabi representing the athletes in this matter. Again, District Attorney of Allegheny County. Your Honor, at the end of the day, there is no Fifth Amendment due process problem because she wasn't prosecuted pursuant to some workplace rule. She was prosecuted for theft of services, theft of services from taking money from the Commonwealth of Pennsylvania and diverting it to benefit herself and her sister. That's what she was prosecuted for and that's what she was convicted of. What's your response to this argument that since there's no specific quantum that was required for the state, that there could be no diversion? Well, they like to point out the idea that she didn't, her work from her office didn't go down. She had the most opinions or whatever it was. She could have produced more. It's not just the idea that she produced enough. She could have produced more. Her attorneys could have written more opinions. They could have used less government resources that were diverted to her family. For example, copiers, phone calls, trips. There were trips to different political functions. All these things were charged back to the state for taking her to meetings, political functions, meet and greets at law firms. All of these things all got charged back to the state. That's where the theft of services comes from. It's everything she did that benefited herself or her sister in their political careers. That's what was stolen here and the fact that I can't put a, you know, they didn't clock in at one and two and they clocked in from one to four and that one to four got diverted doesn't matter because it's the entire... What does diversion mean then? I mean, do you have to address the diversion argument? In other words, I pose it to you as Judge Bibas did to your colleague. Does it matter whether or not the state lost something or is what matters that she got something she wasn't entitled to? It's that she got something she wasn't entitled to and I mean and the state lost because the state lost because that time was important for the state activities, but she also gained by the idea... Is it true that it was important for state activities? Because that's, I take that to be their very central argument. If we take the approach you're arguing right there, I take you to be fighting on their ground. They say, no, the state lost nothing. The Justice was just doing everything she was supposed to do. She got everything done. Her staff was not just productive. They were the most productive. So the state got everything it was entitled to and then some and the fact that people did some stuff to help her should be irrelevant. I have a segue in there. I'm sorry. We jumped in. What I was going to say was, but she didn't have to pay to hire a staffer of her own to do the political activity. She didn't have to pay for a driver. She didn't have to pay for all of those things. All the functions that Senator Orrey staffed it and that Justice Orrey Melvin staffed it were things that she didn't have to hire somebody to do because she was using the state's resources to do it for her. That's what it boils down to. So you're saying it is it is diversion as well as an inappropriately obtained benefit that Justice Orrey Melvin got things she wouldn't have been entitled to and she got them from the state. And so the state was losing. Right. And the state paid for it. It's that it paid for her political campaign. And if you have any further questions. Thank you. Thank you, Your Honor. Just to respond to a few points raised by opposing counsel. The issue here, and there was no testimony or evidence of any loss or damage or destruction or harm resulting to equipment like copiers or things of that nature. The issue is purely staff. Well, are you saying that there was no evidence put before the jury that there was a car and a driver used for political purposes? Well, there was no no car, no driver. The issue was staff misuse of the staff. They didn't they didn't put evidence in front of the jury that said, hey, she was she had staff people taking her to political functions. She used office equipment to produce things for her political benefit. None of that. That wasn't evidence. Is that what you're saying? Well, with regard to the court staff, there was no argument that a car was provided or that that equipment there's no cost put on to any misuse of any alleged equipment if they didn't put a cost on it. Were they was that evidence put in front of the jury? There was some testimony that copies were made. There are no reference to a car or a trip. The issue though, and another issue, another due process problem I mentioned to during my earlier argument. But the problem here is to criminalize a violation of a work rule really invites arbitrary enforcement of the type that led to invalidating statutes and skilling in other cases that we've cited. So leave up to the prosecutor the discretion to decide which deviation from a job description or a work rule would result in criminal prosecution or punishment is a plain violation of due process. In every workplace, every day employees deviate from their assigned work duties. Well, that's true, but that's a little like saying there's no judgment that's vested in prosecutors to decide where something goes from bad judgment to criminal. But that happens all the time in all kinds of cases. That's the very definition of prosecutorial discretion, right? What you did may have been bad and dishonest, but we're not going to charge you for that because it's not bad enough. But it's not bad enough and we charge. What reasoned rule can you give us that would say, well, what Justice Rory Melvin did was not bad enough and therefore, as a matter of federal constitutional law, this conviction should be struck down? Well, we give discretion to prosecutors to decide when there's a bright line rule on a statute. We give them discretion to decide when to prosecute according to that bright line rule. The problem here is the bright line rule isn't in a statute. It's in a workplace rule. It's an employment policy. And those types of policies... What about the statute she was charged under and convicted under? Which makes no reference, again, to political activity. It makes no reference to job descriptions or employment policies. It does nothing to tell managers that they might be... Are you saying as a matter, as a general matter, there could never be a theft of government services based on political activity because the statute doesn't mention political activity? No, we're not asking the court to go that far. But here, in this case, where the prosecutor held up the rule and said, here's the standard, and when you violated this rule, you committed theft, that's the due process problem. And the slippery slope argument is that to rely on a workplace rule as the standard of liability just invites arbitrary enforcement and violation of skilling and the other cases we've cited. Okay. Thank you very much. We request that the conviction be vacated. Thank you. Thank counsel for argument. Appreciate the help you've given us. We've got the cases under advisement.